At this time, I'd like to reserve two minutes for rebuttal. Your Honor, this case deals with the question of whether state psychologists who prepare psychological assessments of inmates for the parole board are entitled to quasi-traditional immunity. The U.S. Supreme Court has recognized that when traditional immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges. That is because they, too, exercise a discretionary judgment as part of their function. Your voice is breaking up a little bit. If you can get close to your microphone, I don't know what the problem is, but it would be helpful. All right. They set this up for me. I'm a slow loader. Okay. I'm sorry. That's better. This court has also extended absolute immunity to parole officials engaged in tasks integrally related to an official's decision to grant or revoke parole. As I will explain, Parsons and Goldstein are entitled to quasi-judicial immunity in this case because they exercise discretionary judgment in preparing a comprehensive psychological risk assessment. How do I – let me tell you what my concern is in this case. Your position may be correct, but we're here on a motion for judgment on the pleadings. And how can I tell from the pleadings that your clients exercise the kind of judgment that you're now saying? You chose to file a motion for judgment on the pleadings. You could have waited for summary judgment and filed an affidavit and explained their role in the system. But all I have here are the pleadings from Mr. Gay, who says they don't exercise that kind of authority. And the district judge, as I read it, was very careful to say, look, I'm restricted to the pleadings. On the pleadings, you don't seem to meet the Supreme Court standard. May turn out later you do. So tell me why, if I am restricted to the pleadings, I can get to your position in the case. Yes, your honors. Several things. First, the pleadings, the plaintiff's complaint, Gay's complaint, includes the report that was prepared by the psychologist that demonstrates what they were looking at and discloses how  it was done. So you can look at the report. No, the report's fine. My question is, how does the report indicate that they are making judicial decisions, if you will, as opposed to charging decisions? Well, the function, you can also look, aside from the report, this is required under California law, Title 15, Section 2240, indicates that these psychologists are employed by the Board of Parole hearings. Unlike the situation in Swift and Anderson, which the district court relied on, these individuals are not engaging in a law enforcement function. Instead, like the situation in Burks, where a court-appointed psychologist is acting in close relation to the judicial process, these individuals are performing the same function for the Board of Parole hearings. And the Third Circuit has recognized that the only way to ensure unvarnished objective evaluations from court-appointed professionals is to afford them absolute immunity from performing evaluations. But the Third Circuit case, and this goes to my original question, was decided on summary judgment. Correct. Somebody came in and presented evidence about the function of the court psychologists, and the court said there's no, the district court said, well, there's no dispute of fact. They're part of the judicial process. They're part of the decision-making function, and therefore, they're entitled to quasi-judicial immunity. My problem here is that that's not what the complaint alleges, and I've read the statute. The statute doesn't really say that their function is to be, you know, the kind of function the Supreme Court says you have to have. My strong suspicion is that it is, but like Judge Breyer, I'm stuck with the allegations of the complaint. So, how do I get past the four corners of the complaint here? Aside from the four corners of the complaint, I think you can look at Gay himself, who concedes in his brief, quote, the function of a parole board psychologist is straightforward. Perform a psychological evaluation, prepare a report based on that evaluation, and submit that report to the parole board for review. Nothing more, nothing less. So, taking that information from Gay's brief itself, looking at the report, looking at the statute, it's clear, we would argue, that these individuals are not performing a law enforcement function, like investigating a parole violation, as was the case in Swift, or doing some sort of law enforcement task. These are, like the court-appointed psychologists in Berks v. Callion, they are acting in close relationship to the court, they're acting as an arm of the court, as an arm of the parole court. How do you square your reliance on Berks v. Callion with our decision in Swift? Yes, your honor, Swift is distinguishable, because in that case, you had a situation where the parole officers were investigating parole violations, they were engaging in law enforcement functions, and these forensic psychologists, by contrast, are not engaging in a law enforcement function, they are reviewing the inmates' records, they are conducting an interview, and they are using their discretionary judgment, their independent judgment, to determine whether he is a high risk for violence, a moderate risk for violence, or some other, whether he fits into some other category. How do you distinguish Williams v. Consovoy with, how do you square that with Swift? Williams v. the Third Circuit, again, involved psychologists who are using their discretionary independent judgment to assess whether an inmate is likely to be a high risk for violence once he is paroled. Again, Swift involved parole officers who were engaged in law enforcement functions. As the Swift court itself said, they were engaging in tasks that were more akin to a police officer seeking a warrant. That's not what is occurring in this case with these psychologists. These psychologists are more like the court-appointed psychologists in Berks, where they are exercising their discretionary judgment, it's closely associated with the judicial process, so for that reason, they are entitled to quasi-judicial immunity. I guess I'm stuck at the same point that my colleague, Judge Hurwitz, if this were on summary judgment and you could have produced evidence that fleshed out what you're talking about, the role of your clients, you might be in a different spot, but we don't have that here. We have to rely on the pleadings that were before the district judge, and I think many of the eloquent arguments that you make are just not findable in those pleadings, are they? I understand your view, your honor, but I think, as I stated to Judge Hurwitz, there's no dispute about what these individuals were doing. There is a dispute in the pleadings. The state says no, that's not right. The plaintiff basically makes an allegation that they kind of stepped out of their role and made a host of really outrageous statements that had nothing to do with an evaluation of the man, and then based their evaluation on these preconceived racial prejudices. And the judge, what is he supposed to do on a motion to dismiss? The judge is bound, according to Ninth Circuit precedent that's been around for as long as I've been a judge, and that's almost 33 years, to interpret those allegations in a light most favorable to the non-movement, and not to get in there and start weighing evidence. This is a motion for summary judgment. Yes, your honor. Again, the appellee especially wants the court to focus on the alleged wrongdoing, the alleged The focus here should be on what was the function of these individuals. Were they performing a discretionary, engaging in a discretionary judgment, independent judgment? And here, through looking at the statute, Title 15, Section 2240, looking at the report that's attached to the complaint, and again, referring to Gay's own words in his complaint regarding the function of the parole board psychologist, it's straightforward. He says himself, perform a psychological evaluation, prepare a report based on that evaluation, submit that report to the parole board for review. And looking at that report, he was adjudged to be at high risk for violence. They're using their discretionary judgment. But it's not enough, is it? The test isn't whether or not somebody is exercising discretion. The question is whether or not the discretion they're exercising is akin to that of a judge. And so, I mean, the parole officer exercises discretion in determining whether to recommend revocation of parole. He's not required to recommend it. The question here is whether or not the discretion they're exercising is akin to the kind of discretion a judge might be exercising and an integral part of that decision-making process. And so the mere fact that they're exercising discretion doesn't get you there. You have to show that somehow they're part of the judicial process, quasi-judicial process here, because it's a parole board. How can we conclude that on the face of the complaint? Again, I think you can look at the complaint itself, and you can look at the statute. You can also look to these other cases. There are a number of unpublished district court cases, both in this district. There's an unpublished Ninth Circuit case, Tedder v. Stuckey. There's Williams v. Consavoy. Every case that, at least our research says that we've concluded, that every case that has dealt with this issue has determined that these psychologists are entitled to this type of immunity. There's no material distinction between what a court-appointed psychologist does for a court and what the court-appointed psychologists are in court parole hearings. Williams v. Consavoy, Tedder v. Stuckey, the various unpublished district court cases, they all fall down. They all come down on the same side. And some of those cases in the district courts were just on a screening, on a PLRA screening. They were dismissed. So the concern about this not being on a motion for summary judgment, the record not being developed enough, I think there's enough when you put together Title 15, the report in the complaint, and Gay's own acknowledgment in his brief, there's enough for the court to conclude that these individuals were engaging in a discretionary judgment as part of their function. But counsel, the problem isn't just, you know, you're looking at this evidence, as you put it, in a way that you think is reasonable. But you have to remember that in summary judgment, that's fine. But this isn't a motion for summary judgment. It's a motion to dismiss. I understand. Again, I think, as I've stated, with regard to that issue, by looking at, you can know what these individuals were doing through the report and through the statute, you can conclude that they were exercising their discretion, exercising a discretionary judgment as part of their function. Do you want to save the balance of your time? Yes, Your Honor. Very well. Let's hear from Ms. Mastromonaco, please. Thank you. Thank you. Good morning, Your Honors. May I please have the floor for Ms. Mastromonaco on behalf of Appellee Mr. Omar Gay. This court should affirm the lower court's ruling for three main reasons. First, under the Supreme Court case, Antoine v. Byers v. Anderson, courts found that we must apply a functional test to determine whether an official is entitled to quasi-judicial immunity. And under that standard, defendants are not entitled to immunity because they did not act in a way that was functionally comparable to that of a judge. That is to say, they did not exercise discretionary judgment as part of their function. Second, this court should not be persuaded by the defendant's reliance on a third circuit case, Williams v. Consaboy, and the line of California District Court cases relying on Berks v. Callion, where parole psychologists were held to have absolute immunity because those cases were decided under a standard that this court and the Supreme Court has previously rejected. Lastly, if the case is decided by defendants, finding that parole board members were immune from liability for their decision to deny parole are distinguishable and provide no basis for reversing the lower court. So turning to my first point, the defendants did not act in a manner functionally comparable to that of a judge. Do we know what manner they acted in other than what your client alleged in his pro se complaint? Your Honor, I submit we are confined to the facts alleged in the complaint. Let me ask you, this is a hypothetical, so you don't have to tell me it's not the facts of this case. But let's assume that instead of preparing a pre-hearing report, the judge appointed a psychologist or asked the psychologist to aid him in his decision making by preparing a report during the hearing. So the evidence was put in, the judge said, okay, before I decide, it would be really useful, or the board said, really useful for me to have a psychological report. And they asked one of the psychologists to prepare it. Would that psychologist then be entitled to quasi-judicial immunity? No, Your Honor. Never? Never? Narrowly, we can say that parole psychologists who exceed their official scope by acting outside their bounds and asking questions with a religious and racial theme and basing their report in part on those factors have acted outside of their scope and should not have judicial immunity for the reason that doing such does not require the exercise of judicial discretion. Well, but see, the question is whether their job requires the exercise, not whether they blew it in this case. So if a court appointed in a medical malpractice case a doctor as a court-appointed expert to look at the record and give the court its opinion about whether or not malpractice had been committed, wouldn't that doctor be entitled to quasi-judicial immunity? I would submit the answer is no, Your Honor. And this is because discretion has a particular meaning. The Supreme Court in Antwon said the touchstone of the doctrine of judicial immunity is performing a function in resolving the disputes between parties or in authoritatively adjudicating private rights. And those actions are those that require judicial discretion. So I would submit that a psychologist who interviews an inmate to assess his or her risk for violence or a medical professional preparing a report at the direction of the court, they're not making any determination or adjudication as to a party's rights. And therefore, they're not using discretion as that term is understood. Rather, they are gathering facts and distilling those into findings that another official can then use. Did that answer your question, Your Honor? Yes. Thank you. I'll continue to my own. I'm not saying I agree, but it answered my question. I appreciate that. So the Supreme Court in Antwon recognized that judicial immunity is a historical development, meaning that it only extends to those performing a duty comparable to one for which officials were deemed immune at common law. And there's no dispute here that the defendants have not articulated any common law basis for extending immunity to psychologists. So where no common law tradition supports the extension of quasi-judicial immunity, Antwon dictates that courts must apply a functional approach and only extend immunity to those officials who make judgments which are functionally comparable to judges. And so Antwon explained that this means the official's decision must have involved the exercise of discretionary judgment, such as in the resolution of feuds or in the adjudication of rights. And so here the defendants really did neither. As alleged in the complaint, defendants asked Mr. Gay racial and religiously motivated questions and used these factors to influence their assessment of Mr. Gay's risk for violence. See, I think you're confusing in this case their alleged abuse of discretion with whether or not they were exercising a discretionary function. If they had quasi-judicial immunity, let's assume they were a judge and asked racial questions. He would be abusing his discretion, but he'd still have judicial immunity, wouldn't he? Your Honor, that answer is not clear. But regardless of whether the defendant... No, no, but just let's assume that I'm a trial judge and I'm a terrible trial judge, and I would be. And I ask a question that's racial in nature, that shows my bias. I might get reversed. I might get impeached. I might get removed from the bench. But wouldn't I still have judicial immunity for my statement? If those statements, Your Honor, were made in the course of an action that is judicial in nature, then yes. Well, that's my point. My point is not... Your argument should not be whether or not they abused their discretion. The question is whether or not they were exercising their discretion in what the Supreme Court has said is a quasi-judicial function. Whether they abused it or not doesn't answer the question for me. Understood, Your Honor. Even setting aside the racial and religious factors at play here, I would submit that the defendants nevertheless did not exercise any judicial discretion because their duties did not require them to balance two competing interests as a judge must do. And therefore, there was no exercise of judicial discretion in that sense. We're in your complaint. Do you make the allegation or allegations that you would like us to rely upon for the proposition that the two gentlemen here were performing a quasi-judicial function in the sense recognized in Enflon? Your Honor, my position is that the defendants here were not exercising a quasi-judicial function. I understand. I'm saying we're in the complaint. Is there an allegation or allegations that we should look to to see whether at least there's an allegation they were performing a quasi-judicial function. Was there any such thing in this case by your client? Your Honor, the complaint contained numerous allegations about the interview process. Okay, so there was clearly no allegation in your client's complaint to that effect. So, to the degree there's anything, it would be in the answer. And where in the answer would you think there's anything in the answer that might give your opponent some legs, if you will, in the argument that they were performing a quasi-judicial function. No, Your Honor, I cannot point to anything in the record that would support the defendant's argument that they were exercising a quasi-judicial function. There's nothing in the record to show that the defendants here formed an evaluation. There's nothing in the record to show that the defendants submitted a report that was in essence an adjudication. The report was not binding on the parole board. The report merely presented findings based on the defendants' thought-gathering through their interview with Mr. Gay. I recognize it's a pro se complaint. But at least there seem to be some allegations that they're performing only an investigatory role. I'm looking at pages 33 and 34 and 39 and 40 of the complaint. Those allegations may be wrong. But we're at the stage, we're at the in effect motion to dismiss stage, judgment on the pleading stage. So there are some allegations in your client's complaint that they're just doing an investigation. Yes, Your Honor. The complaint does not say explicitly that the defendants only performed an investigation, but the facts show that that is the case. The complaint details the question and answer process between the defendants and the plaintiff. And that shows that the function that the defendants performed here was to act as a fact finder. And may I address the defendants' point that the defendants were not acting in a manner that was similar to a law enforcement official. I believe the defendants cite Swift to make that point. In Swift, the court determined that parole officials were not entitled to immunity for investigating parole violations. And they reasoned that that action is similar to a law enforcement official who investigates criminal behavior. I would say that reasoning is directly applicable here because what matters here is not the title of the official or their importance to the judicial function, but rather the nature of the function they performed. And here that is the act of investigating through the interview process. And that's exactly what the complaint details, and that's what happened here. Okay. And may I turn to my second point? Thank you, Your Honor. The defendants relied heavily on the Third Circuit decision in Williams v. Consovoy and a number of California District Court cases where the parole psychologist was found to have absolute immunity. This court should not be persuaded by these cases because they failed to apply the test set forth in Antwon. The California District Court cases all relied on Berks v. Callion, which found that parole psychologists are entitled to immunity. Those cases reasoned that because court-appointed psychologists are so-called integral to the judicial process and therefore have immunity, that same immunity should also extend to parole psychologists since there is no material distinction between a psychologist performing an evaluation at the direction of a parole board versus at the direction of the court. And with due respect, these cases relying on Berks were broadly decided insofar as they asked whether the official's role was integral to the judicial process as the criteria for deciding whether immunity applies. That test is now obsolete in light of Antwon. This court is bound to follow the functional test established in Antwon and applied in Swift, which asks whether the official in question acted in a manner functionally comparable to a judge. Likewise, the defendants' reliance on the Third Circuit case Williams v. Consovoy should not persuade the court. Respectfully, Consovoy was also wrongly decided because it failed to apply Antwon's functional test. So although Consovoy used the word functional, it never actually performed the analysis required under Antwon. Instead, the Consovoy court concluded that the psychiatrist in question had immunity because he was acting in a way that was integral to the judicial process and acting as an arm of the court. However, Antwon has confirmed that whether the official's role was important or indispensable to the judicial process is no longer the relevant standard for purposes of quasi-judicial immunity. And lastly, the cases the defendants rely on which held that members of the parole board are entitled to absolute immunity for their decisions to grant or deny parole are the opposite. In those cases, the court recognized that parole members' function of deciding whether or not to grant parole is inherently discretionary and requires judicial decision-making. Here, Parsons and Goldstein are not members of the parole board, they did not participate in the parole hearing, and they made no binding decision about whether Mr. Gange should receive parole or not. Accordingly, these cases that found parole board members immune should not guide the court in its decision. Unless the court has any further questions, I would submit. Any questions by my colleague? Thank you, Ms. Mastromonaco, for your argument. Mr. Quinn, you have a little time left. Thank you, Your Honor. Just a few things on rebuttal. One thing to call the court's attention to, I think the appellee's standard is far too narrow. Apparently, even under their standard, even judges in some cases would not be entitled to quasi-judicial immunity. Another thing I want to call the court's attention to is the statute itself, which I referred to, Title 15, Section 2240. Within that statute, it states that the psychologist shall incorporate structured risk assessment instruments that are commonly used by mental health professionals who assess the risk of violence of incarcerated individuals. The court takes judicial notice of this statute. The statute, in our view, makes clear that these individuals are not acting as law enforcement investigators. They are exercising a discretionary judgment in the course of conducting the interview and preparing the report. But the question I'd like you to address, and the statute really doesn't help me on that, is the Supreme Court says in Antoine, and we say in Swift, the question is whether they're exercising quasi-judicial discretion. So I have no doubt they're exercising discretion. How are they exercising quasi-judicial discretion? Well, in the sense that they're making a judgment as to whether they're exercising a discretionary judgment as to whether an individual is a high risk for violence, a moderate risk for violence, or some other... Well, are they exercising a discretion about whether he will get parole? No, they're just making an analysis, looking at his records, conducting the interview. Is this person a high risk for violence, or does he fall into some other category? And by looking at the complaint itself, you can see that. For those reasons... Your time is up. Do either of my colleagues have additional questions? I don't, thank you. Okay, thank you both. We appreciate it very much. The case just argued, Gay v. Parsons, is submitted. We wish you both a good day. Thank you.
judges: M. Smith, Jr., Hurwitz, Ezra